UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

Carmen A. Clark,

      Debtor.                           Case No. 13-12132-j13

Carmen A. Clark,

      Plaintiff,

v.                                      Adversary No. 13-1077 T

Envoy Mortgage, Ltd.

      Defendant.

## **MEMORANDUM OPINION**

Plaintiff sued Defendant Envoy Mortgage, Ltd, complaining that Defendant agreed to make a reverse mortgage loan to Plaintiff that would have paid off a defaulted mortgage on her house, but then never followed through and made the loan. Defendant responded that it worked diligently to close the loan but was prevented from doing so by the actions of Plaintiff and third parties. Defendant also argued, perhaps in the alternative, that is was only the mortgage broker, not the lender. Defendant seeks summary judgment on all claims.[1] For the reasons set forth below, numerous fact issues prevent entry of summary judgment, so the Motion must be denied.

### I.    FACTS

The following facts are not in genuine dispute. These facts are taken from admissible evidence presented in the Motion and the Response, as well as through the Court taking judicial

---

[1] Defendant's Motion for Summary Judgment, filed April 30, 2014, doc. 18 (the "Motion"). Plaintiff responded June 16, 2014, doc. 23 (the "Response"), and Defendant filed a supporting reply in July 21, 2014, doc. 28 (the "Reply").

notice of the docket in this adversary proceeding, this bankruptcy case, and bankruptcy case no. 12-12872:[2]

On March 31, 2000, Plaintiff's daughter borrowed money from Citimortgage. Plaintiff granted Citicorp a mortgage on her house at 740 E. Lucero, Las Cruces, New Mexico (the "House") to secure repayment of the loan. Plaintiff's daughter died on May 23, 2012. Plaintiff had been named in a foreclosure action brought by Citicorp but had failed to respond, and a default judgment had been entered against her on May 25, 2012.

A foreclosure sale for the House was scheduled for August 9, 2012. On July 31, 2012, Plaintiff filed a Chapter 13 bankruptcy case, no. 12-12872 (the "Prior Bankruptcy Case").

Between November 30 and December 11, 2012, Plaintiff, with the help of her daughter-in-law Patricia Clark, submitted an application for a residential reverse mortgage loan[3] (the "Loan Application") with Defendant. Kelly Krauth was the loan officer at Defendant assigned to handle the Loan Application.

On December 13, 2012, Defendant ordered an appraisal of the House from Landmark Network (the "Appraiser"). The Appraiser inspected the House on January 10, 2014. It is unclear who caused the 28-day delay.

---

[2] *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[3] A reverse mortgage is a loan to borrowers 62 years or older that uses a portion of the borrower's homes equity as collateral. The loan generally does not have to be repaid until the last surviving homeowner permanently moves out of the property or dies. At that time, the estate has approximately 6 months to repay the balance of the reverse mortgage or sell the home to pay off the balance. The lender may foreclose the mortgage if not paid within the six month period. *See http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/hecm/rmtopten.*

In January 2013, Ms. Krauth told Patricia Clark that Plaintiff needed to dismiss the Prior Bankruptcy Case because the loan was certain to be approved. On January 10, 2013, an order was entered dismissing the Prior Bankruptcy Case.

On January 29, 2013, Ms. Krauth e-mailed Patricia Clark and said that getting the death certificate for Plaintiff's daughter would wrap up the Loan Application and should allow closing the following week. In the same e-mail Ms. Krauth stated: "Tell [Plaintiff] NOT to make her February [mortgage] payment." On February 5, 2013, Ms. Krauth told Patricia Clark that the only thing holding up closing was providing the death certificate. Patricia Clark provided the death certificate to Ms. Krauth on February 7, 2013.

On February 14, 2013, a document entitled "Approved Loan Notification" (the "Loan Approval") was issued by Urban Financial Group ("Urban"). There is no indication the Loan Approval was sent to Plaintiff or Patricia Clark. Despite Ms. Krauth's statements that the death certificate was the only thing holding up closing the loan closing, the Appraiser had identified problems with the House that needed to be fixed. The problems were listed in the Loan Approval.

Plaintiff began working on the needed House repairs. Despite the fact that Defendant ordered a final inspection report from the Appraiser to be delivered by March 21, 2013, there were significant delays in getting the final report completed. It is unclear who caused the delay. On April 19, 2013, Defendant received an updated final inspection report from the Appraiser. It appears the report showed that all the necessary repairs were completed.

Beginning April 23, 2013, Defendant contacted CitiMortgage to obtain a payoff statement. This process proved very difficult and, despite repeated inquiries, Defendant did not receive a payoff until June 5, 2013. It is unclear who caused the delay.

The Loan Approval specified that the title commitment expired May 15, 2013, and the Appraisal expired May 17, 2013. Because the Citicorp payoff was not obtained until June 5, 2013, both the title commitment and Appraisal were "stale," and Defendant would not close the loan. Further, Defendant had left the Las Cruces market by then and no longer brokered/originated mortgage loans to Las Cruces residents. The loan never closed, and on July 24, 2013, Plaintiff filed this Chapter 13 bankruptcy case.

## II.     DISCUSSION

### A.     Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Fed.R.Civ.P. 56 applies in adversary proceedings. *See* Bankruptcy Rule 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993) ("[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing

-4-

that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir. 1980) (once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus,* 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

B.    Breach of Contract Claim.

Plaintiff claims Defendant made a legally binding loan commitment and then breached the commitment, causing substantial damage. Defendant argues that no such contract existed or, in the alternative, that the evidence is undisputed that Defendant did not breach the contract. Defendant also asserted that it only acted as a loan broker, not a lender. Reply, p. 5.

1.    Loan Commitment. A loan commitment can be a binding, enforceable contract. *See, e.g.,* 11 U.S.C. § 365(c) (contracts to make loans are not assignable); § 365(e)

-5-

(contracts to make loans are carved out of the general rule making *ipso facto* clauses unenforceable). *See also In re TS Industries, Inc.,* 117 B.R. 682, 686 (Bankr. D. Utah 1990) (stating that contracts such as loan commitments and letters of credit are nonassignable); *In re Werth,* 37 B.R. 979, 989 (Bankr. D. Colo. 1984) (bank liable for damages caused by breach of its oral loan commitment to debtor); *National Farmer's Org., Inc. v. The Kinsley Bank*, 731 F.2d 1464 (10th Cir. 1984) (affirming lower court judgment against bank for damages caused by breach of loan commitment). *See generally Lujan v. Pendaries Properties, Inc.,* 96 N.M. 771, 774 (1981) (court upheld award of damages, finding that a loan commitment issued by a savings and loan association was binding and could be enforced by the borrower); *First Nat. Bank in Clayton v. Wood,* 93 N.M. 467 (Ct. App. 1979) (holding that bank was bound by the terms of its loan commitment).

Defendant argues that all Plaintiff did was submit the Loan Application, which "did not create any obligation on the part of Defendant or [Plaintiff]." Motion, p. 5. This argument ignores several important facts, including the Loan Approval issued by Urban on February 14, 2013. The Loan Approval creates fact issues about whether a binding loan commitment was made, and if so by whom and to whom. Further, if a loan commitment was made, there are fact issues about whether it was breached by Defendant. Summary judgment on this claim is not appropriate.

      2.   <u>Lender or Loan Broker?</u>   There are also fact issues about whether Defendant was a loan broker, a lender, or both. Defendant's duties to Plaintiff may differ depending on whether it was a lender or loan broker. If Defendant was a lender, its duties would primarily be contractual (assuming there was a contract), but also governed by the various statutes and regulations concerning lenders. *See, e.g.,* §58-21A-4 N.M.S.A. 1978 (prohibiting

certain actions by creditors); *Shea v. H.S. Pickrell Co., Inc.*, 748 P.2d 980, 984 (N.M. Ct. App. 1987) (holding that lender has no duty to disclose financial condition of other customers); *Harrison v. Wahatoyas, LLC*, 253 F.3d 552 (10th Cit. 2001) (holding that under Colorado law there is no per se fiduciary duty between a borrower and a lender). *Cf. R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 766 P.2d 928, 936 (N.M. Ct. App. 1988) (a lender had a duty to borrower where lender thrust itself into the transaction and made assurances regarding availability of future funding, despite fact that it had obligation to make any statement at all on the subject).

If Defendant were a mortgage loan broker, on the other hand, it might have been Plaintiff's agent, with attendant duties. *See* New Mexico Mortgage Loan Companies and Loan Brokers Act §58-21-1 et seq. (a mortgage loan broker has disclosure duties to its customers). *See also Rauscher Pierce Refsnes, Inc. v. Great Southwest Savings, F.A.* 923 S.W.2d 112 (Tex. App 1996) (relationship between broker and its customer is one of principal and agent, and broker may become liable to his principal for any negligent or other wrongful action done by him that causes damage to the principal).

There is some evidence in the record of such a principal/agent relationship between Plaintiff and Defendant. Defendant's representative averred in her affidavit that Defendant was "brokering reverse mortgages" in New Mexico. In addition, the Loan Approval was issued by Urban, not Defendant.[4]

---

[4] It is not clear that the Loan Approval was given to Plaintiff or Patricia Clark. If neither one was aware of the Loan Approval, it could be that Defendant was acting as agent for an undisclosed principal (Urban), and therefore could be liable under a breach of contract theory. In some circumstances, an agent can be liable under a contract is signs with an undisclosed principal. *See, e.g., Morris Oil Co., Inc. v. Rainbow Oilfield Trucking, Inc.,* 106 N.M. 237, 240 (Ct. App. 1987) (where a third party enters into a contract with an agent for an undisclosed principal, the third party, upon discovery of the agency, may bring action against both principal and agent).

-7-

On the other hand, many emails from Kelly Krauth, Defendant's employee, say that Defendant is "New Mexico's Favorite Lender" and that Ms. Krauth "look[s] forward to being YOUR favorite lender too!" Given this lack of clarity about Defendant's status as a loan broker, agent for Urban, and/or potential lender, summary judgment is not appropriate.

C.    Claim for Breach of Covenant of Good Faith and Fair Dealing.

Defendant asserts that, under the facts of this case, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails. Specifically, Defendant argues that it "acted diligently to close the loan" and factors outside of its control prevented closing prior to the appraisal becoming stale. Motion, p. 7. Plaintiff disagreed and provided contrary evidence. Although Defendant may prove that it was not responsible for any of the delays, the issues must be tried.

Additionally, Defendant argues that "a claim for breach of the covenant of good faith and fair dealing cannot survive absent a valid breach of contract claim." Motion, p. 6. This argument lacks merit. Defendant is right that the claim for breach of the covenant of good faith and fair dealing sounds in contract. *See Bourgeous v Horizon Healthcare Corp.*, 872 P.2d 852, 857 (N.M. 1994); *Anderson Living Trust v. ConocoPhillips Co., LLC,* 952 F.Supp.2d 979, 1032 (D.N.M. 2013); *Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 925 (N.M. Ct. App. 2003) (stating that implied covenant of good faith and fair dealing depends upon the existence of an underlying contractual relationship). The primary purpose of the implied covenant of good faith and fair dealing is to ensure that "neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co., Inc. v. Males*, 801 P.2d 639, 642 (N.M. 1990) (citation omitted). Ultimately, the covenant of good faith and fair dealing "allows courts to award damages for breach of contract when on party prevents another from getting the

benefits of a contractual arrangement." *Heimann v. Kinder-Morgan CO2 Co., LP*, 144 P.3d 111, 117 (N.M. Ct. App. 2006) (citation omitted). Thus, although an underlying contract is required, the breach of the implied covenant of good faith and fair dealing constitutes a breach of contract, and no other breach need be proven.

There are questions whether the Loan Approval was an enforceable contract and, if so, who the contracting parties were. If such a contract existed, then there are also fact issues about whether the delays in closing the loan were attributable to Defendant or someone else, and if such delays constituted a breach of the implied covenant of good faith and fair dealing. The fact issues prevent entry of summary judgment.

D.    <u>Negligence Claim</u>.

Plaintiff pleads a cause of action for negligence in its Complaint. Claims based on breach of loan commitments sound in contract, rather than tort. *See e.g., Kelly v. Gaines*, 181 S.W.3d 394, 408 (Tex. App. 2005), reversed on other grounds, 235 S.W.3d 179 (Tex. 2007) ("If the defendant's conduct . . .  would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract"). Thus, if Defendant's relationship with Borrower was one of lender and borrower, Defendant's duties would be contractual in nature, and a claim for negligence likely would not arise. On the other hand, if Defendant was Plaintiff's agent, then Plaintiff could have tort claims against Defendant, including a claim for negligence.

In its Motion, Defendant alleges that under the facts of this case "[n]one of the delays in the loan process were caused by Defendant." Motion at 8. This allegation is hotly disputed in the Response. It may be that Defendant acted diligently and satisfied any obligation it had, as Plaintiff's agent, to close the loan. It could also be, however, that Defendant was negligent in

processing the Loan Application. There are genuine issues of material fact regarding this question.

     E.    <u>Unfair Trade Practices Claim</u>.

Plaintiff asserts that Defendant made certain false representations to Plaintiff about obtaining reverse mortgage loans, and that the misrepresentations constituted unfair trade practices under New Mexico's Unfair Trade Practices Act, N.M.S.A. 57-12-1 et seq. ("UPA"). "The three essential elements of a UPA claim are: (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person." *Maese v. Garrett*, 2014 WL 1600894 (N.M. App. 2014).

In its Motion, the Defendant argues that the Complaint fails to identify any "factual averments that can be linked to any purported false or deceptive statements." Motion, p. 9. Defendant argues further that it did not misrepresent anything, and instead attempted to close the loan as soon as practicable, staying in close contact with Plaintiff in the meantime. In response to Defendant's position, Plaintiff alleged that Defendant made a number of misrepresentations. Response, pp. 3-9, 13. The Court finds that there are disputed fact issues about what statements, if any, Defendant made to Plaintiff that might come within the UPA, including what Defendant told Plaintiff about the speed and certainty of the loan approval process, whether Defendant was a lender or a loan broker, whether Defendant might leave the state of New Mexico and abandon the loan, and similar issues. Because of these and other fact issues, the Motion must be denied with respect to the UPA claim.

F.     Amended Complaint.

The Motion, Response, and Reply show that the current pleadings are not sufficient. Had the Motion been a Rule 12(b)(6) motion, the Court likely would have denied the motion on the condition that Plaintiff file an amended complaint addressing the deficiencies. To achieve a similar result, for the benefit of the parties and the Court, the Court will require Plaintiff to file an amended complaint within two weeks from entry of this Memorandum Opinion. The amended complaint should state each cause of action separately, should make specific allegations about whether Defendant was a lender, lender's agent, or Plaintiff's principal, should state all fraud allegations with particularity, and should otherwise conform to the general rule of well-pleaded complaints.

V.     CONCLUSION

The Court needs to hear the testimony of witnesses and find out why, and who is to blame for, a simple residential mortgage loan application taking more than six months to process and then abandon. It may well be that the delays were not attributable to the Defendant, but there are genuine issues of material fact on this issue. The Court also needs evidence on the nature of the relationship between Defendant and Plaintiff. Finally, Plaintiff should file an amended complaint to address current deficiencies in the pleadings.

A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered:  August 6, 2014.

Copies to:

Trey Arvizu
P.O. Box 1479
Las Cruces, NM 88004

Stephanie Schaeffer
500 Marquette Ave., NW, #650
Albuquerque, NM 87103